IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELLE P.[1] | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LELAND DUDEK, Acting | : | NO.  23-2098 |
| Commissioner of Social Security[2] | : | |

## MEMORANDUM AND ORDER

ELIZABETH T. HEY, U.S.M.J.                                    March 27, 2025

Plaintiff seeks review of the Commissioner's decision denying her application for

disability insurance benefits ("DIB") and disabled widow's benefits ("DWB") under Title

II of the Social Security Act, and for supplemental security income ("SSI") under Title

XVI.  For the reasons that follow, I conclude that the decision of the Administrative Law

Judge ("ALJ") is supported by substantial evidence.

## I.    PROCEDURAL HISTORY

Plaintiff filed her applications on March 26, 2021, tr. at 115-17, 263-64; 270-74,

279-80, alleging disability from May 26, 2020, as a result of diabetes, arthritis, asthma,

---

[1]Consistent with the practice of this court to protect the privacy interests of plaintiffs in social security cases, I will refer to Plaintiff using her first name and last initial.  See Standing Order – In re:  Party Identification in Social Security Cases (E.D. Pa. June 10, 2024).

[2]Leland Dudek became Acting Commissioner of Social Security on or about February 17, 2025, upon the resignation of Acting Commissioner Michelle King. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Dudek should be substituted as the defendant in this case.  No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).

thyroid disease, and fatty liver.  Tr. at 298.[3]  Her applications were denied initially, id. at

70-84, 85-99, 100-14, and on reconsideration, id. at 118-26, 127-35, 136-44, and she

requested an administrative hearing.  Id. at 175-76.  After holding a hearing on June 24,

2022, id. at 36-66, the ALJ issued an unfavorable decision on July 22, 2022.  Id. at 16-30.

The Appeals Council denied Plaintiff's request for review on April 18, 2023, id. at 1-3,

making the ALJ's July 22, 2022 decision the final decision of the Commissioner.  20

C.F.R. §§ 404.981, 416.1481.  Plaintiff sought review in this court on June 1, 2023, Doc.

1, and the matter is now fully briefed and ripe for review.  Docs. 10-11.[4]

## II.    LEGAL STANDARD

The court's role on judicial review is to determine whether the Commissioner's

decision is supported by substantial evidence.  42 U.S.C. § 405(g); Schaudeck v. Comm'r

of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  Therefore, the issue in this case is

whether there is substantial evidence to support the Commissioner's conclusions that

---

[3]For purposes of SSI, the earliest month for which benefits can be paid "is the month following the month [the claimant] filed the application," if the claimant meets all the other requirements for eligibility.  20 C.F.R. § 416.335.  To be entitled to DIB, Plaintiff must establish that she became disabled on or before her date last insured.  Id. § 404.131(b).  The Certified Earning Record indicates and the ALJ found that Plaintiff was insured through September 2021.  Tr. at 17, 290.  To be entitled to DWB, Plaintiff must establish that she became disabled in the month before the month in which she reached age 60 or, if earlier, the later of 7 years after the insured's death or 7 years after the widow was last entitled to survivor's benefits. 20 C.F.R. § 404.335(c).  Plaintiff is less than 60 years of age (tr. at 43, 280) and her husband died on September 27, 2020 (id. at 279), and therefore the ALJ correctly determined that Plaintiff must establish that her disability began on or before September 30, 2027.  Id. at 17.

[4]The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  See Standing Order – In Re: Direct Assignment of Social Security Appeals to Magistrate Judges – Extension of Pilot Program (E.D. Pa. Nov. 27, 2020); Doc. 8.

Plaintiff is not disabled. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla." Zirnsak v. Colvin, 777 F.2d 607, 610 (3d Cir. 2014) (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (substantial evidence "means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court has plenary review of legal issues. Schaudeck, 181 F.3d at 431.

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for . . . not less than twelve months." 42 U.S.C. § 423(d)(1). The Commissioner employs a five-step process, evaluating:

> 1.    Whether the claimant is currently engaged in substantial gainful activity;
>
> 2.    If not, whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities that has lasted or is expected to last for a continuous period of 12 months;
>
> 3.    If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;
>
> 4.    If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe

> impairment, the claimant has the residual functional capacity
> ("RFC") to perform her past work; and
>
> 5.    If the claimant cannot perform her past work,
> then the final step is to determine whether there is other work
> in the national economy that the claimant can perform.

See Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014); see also 20 C.F.R.

§ 416.920(a)(4).  Plaintiff bears the burden of proof at steps one through four, while the

burden shifts to the Commissioner at the fifth step to establish that the claimant is capable

of performing other jobs in the local and national economies, in light of her age,

education, work experience, and RFC.  See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88,

92 (3d Cir. 2007).

## III.    DISCUSSION

### A.    ALJ's Findings and Plaintiff's Claim

In her July 22, 2022 decision, the ALJ found at step one that Plaintiff had not

engaged in substantial gainful activity since May 26, 2020, the alleged onset date.  Tr. at

19.  At step two, the ALJ found that Plaintiff suffers from the severe impairments of

disorders of the spine, right knee disorder, right upper extremity disorder, diabetes

mellitus, and obesity, and that several other conditions were not severe.  Id.  At step

three, the ALJ found that Plaintiff does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the Listings.  Id. at 21.

The ALJ determined that Plaintiff retains the RFC to perform light work, except

she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs;

never climb ladders, ropes, or scaffolds; must avoid concentrated exposure to extreme

4

heat and cold, humidity, fumes, odors, dusts, gases, and poor ventilation; frequently finger, push, pull, and reach in all directions, including overhead, with the right upper extremity; occasionally handle and feel with the right upper extremity; occasionally operate foot controls with the right lower extremity; must avoid more than frequent exposure to vibration and all exposure to hazards including moving machinery and unprotected heights; and can perform work in a loud or quieter environments.  Tr. at 21.

Based on testimony from a vocational expert ("VE"), the ALJ found that Plaintiff is unable to perform her past relevant work as a mental retardation aide, but that other jobs that exist in significant numbers in the national economy that she can perform, such as investigator dealer accounts and usher.  Tr. at 28-29.  As a result, the ALJ concluded that Plaintiff is not disabled.  Id. at 29.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ improperly discounted the opinions of two consultative examiners, resulting in a flawed RFC assessment.  Doc. 10.  Defendant responds that the ALJ's opinion is supported by substantial evidence.  Doc. 11.

### B.    Plaintiff's Claimed Limitations and Testimony at the Hearing

Plaintiff was born on September 18, 1970, and thus was 50 years of age at the time of her applications (March 26, 2021) and 51 years of age at the time of the ALJ's decision (July 22, 2022).  Tr. at 43.  She is 5 feet, 4 inches tall and weighs approximately 178 -to- 191 pounds.  Id. at 43, 298, 523, 545.  Plaintiff graduated from high school and received no specialized training, id. at 43, 299, and has prior work as a cashier and residential personal care aide for physically and mentally disabled adults.  Id. at 45-46,

59, 299.  Following her husband's death in September 2020, Plaintiff lived in a house with her twin children, who were 17 years of age at the time of June 24, 2022 administrative hearing.  Id. at 44.

At that hearing, Plaintiff testified that she is unable to work due to arthritis in her arms, post-surgical issues with both hands, and back pain which is worse when it rains or is cold.  Tr. at 47-48.  She also experiences vertigo approximately 30 times per year, the most recent episode lasting 3 days; panic attacks about 2 -to- 3 times per day since the death of her husband; asthma episodes but no severe asthma attacks; and diabetes with "really scary" drops in blood sugar but no secondary issues.  Id. at 53-57.  She received injections for her back pain which did not really help, id. at 48-49, home exercises for her hands and fingers, id. at 49, 50, and medication for her panic attacks which has helped.  Id. at 55.  She has been given medication for vertigo and is supposed to see a neurologist.  Id.

Plaintiff estimated that she can walk approximately half a block comfortably before having to sit and rest.  Tr. at 49.  She can lift one pound with her right-dominant hand, and up to 5 pounds using both hands.  Id. at 49-50.  She has no difficulty reaching to the front or overhead, and she can retrieve items she drops but with difficulty.  Id. at 50-51.  She has difficulty with buttons, id. at 50, can bathe and dress independently and prepare meals with help from her children, id. at 51, and can do light household chores such as vacuuming and dusting, after which she hurts and needs to sit.  Id. at 51-52.  She rides in a scooter when shopping, does not socialize with friends and family or attend

clubs or religious services.  Id. at 52.  Plaintiff has a smartphone and a laptop but cannot type on either device.  Id. at 52-53.[5]

A VE also testified at the administrative hearing.  Tr. at 58-66.  The VE classified Plaintiff's past relevant work as a mental retardation aide as skilled and medium, performed as light.  Id. at 59.  Based on the hypothetical posed by the ALJ with the limitations included in the ALJ's RFC assessment, see supra at 5, the VE testified that such an individual could perform light, unskilled jobs such as investigator dealer accounts, and usher.  Id. at 61-62.[6]  If the hypothetical individual were limited to standing between two and three hours per day, the VE testified that Plaintiff would be precluded from the identified jobs.  Id. at 63-64.

## C.    **Medical Evidence Summary**[7]

Plaintiff has a history of chronic conditions including type 2 diabetes and obesity, as well as hand problems requiring surgeries and back pain treated conservatively.  For

---

[5]Plaintiff's testimony is largely consistent with function reports she completed on May 17 and December 10, 2021, tr. at 313-20, 333-40, although she also mentioned fatigue and difficulty sleeping in the reports.  Id. at 313, 315, 334.  The record also contains a supplemental functional questionnaire dated February 14, 2022, in which Plaintiff indicated that she experiences fatigue all day, every day, associated with the onset of her illness, id. at 351, and pain "all the time" located in the front and back of her head, neck, shoulders, lower back, both sides, both knees, both hands, and both ankles. Id. at 352.

[6]The ALJ's first hypothetical omitted the postural, reaching, and handling limitations which were contained in the second hypothetical and in the ALJ's RFC assessment.  Tr. at 59-60.  In response to the first hypothetical, the VE testified that such an individual could perform Plaintiff's past work as she performed it, but not as classified.  Id.

[7]Because Plaintiff's sole claim concerns the ALJ's consideration of consultative examiners' opinions regarding Plaintiff's ability to stand and walk, the medical evidence

example, Plaintiff underwent surgery in 2018 to remove a ganglion cyst of the left long finger.  Tr. at 741.  Although a January 15, 2019 EMG performed on Plaintiff's upper extremities yielded normal findings, id. at 725, she continued to have pain in both hands/wrists and underwent trapezium resection and tendon implant arthroplasty on the left hand in August 2019.  Id. at 702.  On February 27, 2020, she underwent a trapezium resection and tendon implant arthroplasty on the right hand, as well as the removal of an atypical pigmented lesion of the left upper arm.  Id. at 684.  On March 5, 2020, Plaintiff reported to her primary care provider, Raquibul Islam, M.D., of ChesPenn Family Health Center at Eastside ("ChesPenn"), that she had undergone surgery on her right hand and was feeling okay.  Id. at 512.  On May 6, 2020, Plaintiff's hand surgeon released her back to work.  Id. at 680.

Plaintiff's primary care visits from March through July 2020 primarily consisted of monitoring Plaintiff's type 2 diabetes and other chronic conditions.  Tr. at 482-517. On May 28, 2020, Plaintiff acknowledged a poor diet and that her diabetes was uncontrolled.  Id. at 494.  On August 13, 2020, she reported that the month prior she slipped and fell in a store,[8] hurting her hands, left knee, left ankle, and lower back, and that she fell in the shower the previous day, cutting her right elbow and causing shoulder pain.  Id. at 475.

---

summary will focus on her physical issues, particularly those affecting standing and walking.

[8]The treatment note indicates that Plaintiff's slip and fall occurred on "8/18," which is clearly a typographical error as the treatment note itself is dated August 13, 2020.  Tr. at 475.  Other treatment notes confirm the fall occurred on July 18, 2020.  See, e.g., id. at 788, 804, 818.

On December 28, 2020, an EMG performed by Bruce H. Grossinger, D.O., revealed positive findings consistent with moderate left S1 radiculopathy. Tr. at 820, 826. Dr. Grossinger performed lumbar epidural injections on January 20 and February 16, 2021, for treatment of Plaintiff's lumbar facet syndrome/lumbar radiculopathy. Id. at 789-90, 792-93. Plaintiff subsequently reported that her lower extremity pain had "significantly decreased" due to the facet injections, and that her primary complaint had become tenderness over her posterior superior iliac spine ("PSIS") into the top of her buttock and low back area. Id. at 804. Dr. Grossinger's examination findings led to diagnoses of lumbar radiculopathy, lumbar facet syndrome, and sacroiliac ("SI") joint dysfunction related to her July 18, 2020 slip and fall. Id. at 805.

On February 13, 2021, Plaintiff presented to Crozer Chester Medical Center after falling on ice. Id. at 410-12. A CT scan of her right upper extremity showed no fracture of her wrist, chronic deformity of the right trapezium with osteoarthritic changes and heterotopic ossification of the first carpometacarpal joint, and mild degenerative changes of the intercarpal articulations and radiocarpal joint. Id. at 410. Similarly, a CT scan of her bilateral feet showed no fractures, with degenerative change noted in the first digit of her left foot at the metatarsophalangeal joint. Id. at 412.

On June 29, 2021, David Dzurinko, M.D., performed an internal medicine consultative examination. Tr. at 520-26. Dr. Dzurinko noted that Plaintiff underwent a thyroidectomy for a goiter in 1996 and experienced fatigue thereafter. Id. at 520. She experienced a slip and fall in 2020 and reported daily back pain rated 9/10 to 10/10, for which she received physical therapy, chiropractic care, and pain management injections -

- the latter two providing no help -- and that she takes ibuprofen for her pain.  Id.  She does not use an ambulatory assistive device.  Id. at 522.  Plaintiff reported having asthma since age 3, for which she uses an inhaler and a nebulizer, with one emergency room visit for asthma in the last 12 months.  Id. at 520-21.  She self-monitors her type 2 diabetes which causes intermittent blurry vision.  Id. at 521.  She reported chronic pain in her hands and knees and her history of bilateral wrist surgery and tendon sheath releases.  Id.  Plaintiff also reported "episodic sudden random vertigo" and had a vertiginous episode while lying recumbent during Dr. Dzurinko's examination.  Id.  Plaintiff's medications included, among others, Synthroid, metformin, glipizide, Lantus, Symbicort, Ventolin, and meclizine.  Id. at 522.[9]

Upon examination by Dr. Dzurinko, Plaintiff exhibited mildly antalgic gate, squat to 10% of full due to pain in her knees and back, and no need for help getting on and off the examination table.  Tr. at 523-24.  She exhibited negative straight-leg raise ("SLR")

---

[9]Synthroid (generic levothyroxine) is used to treat hypothyroidism.  See https://www.drugs.com/synthroid.html (last visited Mar. 10, 2025).  Metformin is an anti-diabetic agent that manages high blood sugar levels in type 2 diabetes patients.  See https://www.drugs.com/metformin.html (last visited Mar. 10, 2025).  Glipizide is a diabetes medication that helps control blood sugar levels by helping the pancreas produce insulin.  See https://www.drugs.com/glipizide.html (last visited Mar. 10, 2025).  Lantus is a synthetic form of insulin.  See https://www.drugs.com/lantus.html (last visited Mar. 10, 2025).  Symbicort is an inhaler used for treatment of asthma.  See https://www.drugs.com/symbicort.html (last visited Mar. 10, 2025).  Ventolin (generic albuterol) is a bronchodilator that relaxes muscles in the airways and increases air flow to the lungs.  See https://www.drugs.com/ventolin.html (last visited Mar. 10, 2025).  Meclizine is used to treat symptoms of vertigo.  See https://www.drugs.com/meclizine.html (last visited Mar. 10, 2025).  Plaintiff also took medications for allergy-related nasal and skin conditions which are not pertinent to the issue before the court.

bilaterally when seated and on the left when supine, with positive findings on the right when supine, isolated to the knee and not radiating from the back.  Id. at 524.[10]  Plaintiff exhibited knee tenderness, greater on the right, and paraspinal tenderness with no evident trigger points.  Id.  She had intact hand and finger dexterity, with 5/5 grip strength on the left and 4/5 on the right.  Id. at 525.

Dr. Dzurinko also completed a medical source statement regarding Plaintiff's ability to do work-related activities.  Tr. at 527-32.  The doctor opined that Plaintiff could frequently lift up to 20 pounds and occasionally lift up to 50 pounds, and occasionally carry up to 20 pounds and nothing more frequently.  Id. at 527.  She could sit for 1 -to-2 hours without interruption and for 6 -to- 7 hours total in an 8-hour workday, stand for 20 -to-30 minutes at a time and for 2 -to-3 hours total, and walk for 15 -to- 20 minutes at a time and 1 -to- 2 hours total.  Id. at 528.  On her right-side extremities, Plaintiff could frequently reach, finger, and push/pull, and occasionally handle and feel with her hands, and occasionally operate foot controls.  Id. at 529.  She had no limitations on the left.  Id.  Plaintiff could frequently climb stairs and ramps and balance, and never perform any other postural activities, id. at 530, and she could frequently tolerate exposure to moving mechanical parts and vibrations and never work around unprotected heights, humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, and heat.  Id. at 531.

---

[10]In the SLR test, the patient lies supine and the symptomatic leg is lifted with the knee fully extended, and is positive for lumbar radiculopathy if pain is pain is produced between 30 and 90 degrees of elevation, with the distribution of the pain indicative of the nerve root involved.  Dorland's Illustrated Medical Dictionary, 32nd ed. (2012) ("DIMD"), at 1900.

Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces.  Id. at 532.

On August 3, 2021, State agency reviewer Esther Kim, M.D., reviewed Plaintiff's medical records and completed a functional assessment as part of the Initial Determination.  Tr. at 77-81, 92-96, 106-11.  Dr. Kim opined that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, and could stand/walk and sit for 6 hours each in an 8-hour workday.  Id. at 77, 92, 107.  She could occasionally climb ramps/stairs, balance, and stoop, and never climb ladders/ropes/scaffolds, kneel, crouch, or crawl, id. at 78, 93, 108, and she should avoid concentrated exposure to extreme cold, extreme heat, humidity, pulmonary irritants (fumes, odors, dusts, gases, poor ventilation), and hazards such as machinery and heights.  Id. at 79, 94, 109.  Dr. Kim determined that Plaintiff retained the ability to perform light-level work.  Id. at 83, 97, 112.[11]

Meanwhile, Plaintiff continued to treat with Dr. Grossinger.  On July 8, 2021, Plaintiff reported 8/10 pain in her lower back, bilateral hips, buttocks, and legs.  Id. at 807.  Dr. Grossinger treated Plaintiff's bilateral SI dysfunction with a series of three steroid joint injections performed on July 8, August 4, and August 23, 2021.  Id. at 806-07, 809-10, 812-13.  On September 20, 2021, he performed radiofrequency ablation and

---

[11]Light exertional work is defined as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b).  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  Id.  To be considered capable of performing a full or wide range of light work, a claimant must have the ability to do substantially all of these activities.  Id.

neurotomy of Plaintiff's bilateral SI joints.  Id. at 815-16.  At a follow-up with Dr.

Grossinger on November 1, 2021, Plaintiff reported 80 -to- 90% relief from the

procedures with manageable intermittent pain.  Id. at 818.  Plaintiff exhibited mild

tenderness and spasm over the PSIS, the ability to rise from a chair with mild slowing,

and some mild lumbar facet loading, again indicating lumbar radiculopathy, lumbar facet

syndrome, and SI joint dysfunction related to her July 18, 2020 slip and fall.  Id. at 819.

Plaintiff continued to receive primary care from Dr. Islam between December

2021 and April 2022.  Tr. at 562-601.  On December 16, 2021, Plaintiff reported feeling

okay, with ongoing grief from the loss of her husband and a new complaint of insomnia.

Id. at 592.  On January 20, 2022, Plaintiff again reported feeling okay, with low back

pain.  Id. at 580.  She did not take her insulin daily, but was compliant with her other

medication.  Id.  Dr. Islam referred her to physical/occupational therapy for treatment of

her low back pain.  Id. at 583.

On January 10, 2022, Preksha Patel, N.P., performed an internal medicine

consultative examination.  Tr. at 543-47.  Plaintiff reported essentially the identical

complaints and history to Dr. Patel as she had to Dr. Dzurinko, see id. at 543-44, except

that Plaintiff rated the arthritic pain in her bilateral hands, knees, and back as 6/10 and

"aching," worse with cold weather and improved with rest.  Id. at 544.  Plaintiff reported

that she treated her pain with a chiropractor and her primary care provider, and that her

pain is increasing.  Id.  Plaintiff's medications included levothyroxine and metformin.  Id.

at 544-45.  Upon examination, Plaintiff exhibited a normal gait, could walk on heels and

toes without difficulty, perform a full squat, and get on and off the examination table

without assistance.  Id. at 545.  SLR testing was negative bilaterally, both supine and

seated, with no pain produced, she had 5/5 strength in her upper and lower extremities,

and intact hand and finger dexterity with ability to zip, button, and tie using bilateral

hands.  Id. at 546.  An x-ray of Plaintiff's right knee showed small joint effusion and

superior dorsal patellar spurring.  Id. at 547, 559.

Dr. Patel also completed a medical source statement regarding Plaintiff's ability to

do work-related activities.  Tr. at 548-53.  The doctor opined that Plaintiff could lift up to

50 pounds occasionally, 20 pounds frequently, and 10 pounds continuously, and that she

could carry up to 50 pounds frequently and 20 pounds continuously.  Id. at 548.  Dr. Patel

further opined that Plaintiff could sit for two hours at once and 8 hours total in an 8-hour

day, stand and walk for one hour each without interruption, stand for 4 -to- 5 hours total,

and walk for 4 hours total.  Id. at 549.  She did not require a cane to ambulate.  Id.  She

could frequently reach, handle, finger, feel, and push/pull with her right-dominant hand,

with no limitation in the left hand.  Id. at 550.  She could continuously operate foot

controls bilaterally.  Id.  Plaintiff could never climb ladders or scaffolds; occasionally

kneel, crouch, and crawl; and frequently climb stairs and ramps, balance, and stoop.  Id.

at 551.  She could never be exposed to unprotected heights, occasionally tolerate

pulmonary irritants and extreme cold, and frequently tolerate all other environmental

conditions.  Id. at 552.

At a January 19, 2022 follow-up with Dr. Grossinger, Plaintiff reported ongoing

relief from her September ablation, with average pain of about 3/10, with pain less

frequent and less intense since the procedure.  Tr. at 787-88.  Dr. Grossinger instructed

14

Plaintiff to continue with in-home stretches and exercises, and to follow-up as needed. Id. at 787, 788.  Plaintiff treated her pain with chiropractic sessions through March 2, 2022, id. 827-830, 861-62, and physical therapy through April 18, 2022.  Id. at 870-931.

On January 20, 2022, at the reconsideration level of review, State agency medical consultant Gene Whang, M.D., concurred with Dr. Kim's functional assessment, except that Plaintiff could occasionally (rather than never) kneel, crouch, and crawl, tr. at 121, 130, 139, and that she should avoid concentrated exposure to only extreme cold and pulmonary irritants (fumes, odors, dusts, gases, poor ventilation).  Id. at 122, 131, 140.[12] Dr. Whang agreed with Dr. Kim's determination that Plaintiff could perform light work. Id. at 125, 134.

On April 19, 2022, a physical examination by Dr. Islam yielded normal findings. Tr. at 565-66.

**D.    Plaintiff's Claim**

As previously set forth, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ improperly discounted the opinions of two consultative examiners, resulting in a flawed RFC assessment and erroneous step five determination.  Doc. 10.  Defendant counters that the ALJ's opinion is supported by substantial evidence.  Doc. 11.

---

[12]Dr. Whang's findings regarding Plaintiff's environmental limitations appear to be inconsistent across each of the disability determination explanations at the reconsideration level of review.  See tr. at 122, 131, 140 (Plaintiff should avoid concentrated exposure to extreme cold and pulmonary irritants) with id. at 123, 132, 141 (Plaintiff should avoid concentrated exposure to extreme cold, vibration, pulmonary irritants, and hazards such as machinery and heights).

The ALJ's consideration of medical opinion evidence is governed by regulations which focus on the persuasiveness of each medical opinion.

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.

20 C.F.R. §§ 404.1520c(a), 416.920c(a).[13]  The regulations list the factors to be utilized in considering medical opinions:  supportability, consistency, treatment relationship including the length and purpose of the treatment and frequency of examinations, specialization, and other factors including familiarity with other evidence in the record or an understanding of the disability program.  Id. §§ 404.1520c(c), 416.920c(c).  The most important of these factors are supportability and consistency, and the regulations require the ALJ to explain these factors, but do not require discussion of the others.  Id. §§ 404.1520c(b)(2), 416.920c(b)(2).  The regulations explain that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be."  Id. §§ 404.1520c(c)(1), 416.920c(c)(1).  Similarly, "[t]he more consistent a medical opinion(s) . . .  is with the evidence from other medical sources and nonmedical sources . . . , the more persuasive the medical opinion(s) . . . will be."  Id. §§ 404.1520c(c)(2), 416c(c)(2).

---

[13]In contrast, the regulations governing applications filed before March 17, 2017, speak in terms of the weight to be given each opinion, including controlling weight for the opinions of certain treating sources.  20 C.F.R. §§ 404.1527, 416.927.

The change in the regulations did not change the basic rule that "[t]he ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing Stewart v. Sec'y HEW, 714 F.2d 287, 290 (3d Cir. 1983)).  When there is a conflict in the evidence, the ALJ may choose which evidence to credit and which evidence not to credit, so long as she does not "reject evidence for no reason or for the wrong reason."  Rutherford, 399 F.3d at 554; see also Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).

Here, following a narrative summary of the medical record and Plaintiff's testimony and subjective complaints, tr. at 22-26, the ALJ addressed the medical opinion evidence as follows:

> Consultative examiner Dr. Dzurinko opined that [Plaintiff] could frequently lift up to 20 pounds and occasionally lift up to 50 pounds, but only occasionally carry up to 20 pounds and nothing more frequently.  She could sit for six to seven hours total, stand for two to three hours total, and walk for one to two hours total.  She could sit for one to two hours total at a time, and she not stand or walk for more than 20 to 30 minutes at a time.  [Plaintiff] could frequently use the upper and lower left extremities to reach, handle, finger, feel, push, pull, and use foot controls.  She could only occasionally handle and feel and operate foot controls with the right upper and lower extremity and frequently reach, finger, and push/pull.  She could frequently climb stairs, and ramps, ladders and scaffolds and never perform any other postural activities.  She could never work around unprotected heights, humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, and heat.  She could occasionally operate foot controls and frequently work around other environmental conditions.  This opinion is somewhat persuasive, but the limitations on stand/walk total as well as sit/stand/walk at one time are not supported.  There is nothing to support that

17

[Plaintiff] has such extreme limitations as related to standing and walking. She does not use any assistive devices. The evidence shows that she got some relief from the interventions sought. The postural and environmental limitations are not supported either. [Plaintiff] has not had any frequent exacerbations of her asthma such that she could never ha[ve] exposure to those conditions noted by Dr. Dzurinko. In view of the right upper extremity difficulties that [Plaintiff] described and in view of the cervical spine objective findings, I do not find that lifting 50 pounds is supported by, or consistent with the record.

Consultative examiner [Ms. Patel] opined that . . . [Plaintiff] could occasionally lift up to 50 pounds and frequently lift up to 20 pounds. She could frequently carry up to 50 pounds and never more than that. [Plaintiff] could sit for eight hours, and stand for about four to five hours and walk for about four hours total in an eight hour workday. She did not require a cane. She could frequently (right) and continuously (left) reach, handle, finger, feel, and push/pull. [Plaintiff] could continuously operate foot controls. She could never climb ladders or scaffolds. She could occasionally kneel, crouch, and crawl, and frequently perform all other postural activities. She can never walk around unprotected heights and occasionally work around dusts, odors, fumes, and pulmonary irritants. She can frequently work around all other environmental conditions. This opinion is unpersuasive. The records support some additional restrictions as relate[d] to the right upper extremity. As for . . . stand/walk, there is nothing to support that [Plaintiff] cannot perform the amount required for light exertion. She does not use any device for ambulation. She is not a candidate for surgery. In view of the upper right extremity difficulties that [Plaintiff] described and in view of the cervical spine objective findings, I do not find that lifting 50 pounds is supported by, or consistent with the record.

State agency medical consultant [Dr. Kim] opined [Plaintiff] could perform light exertion. She could occasionally climb ramps/stairs, balance, and stoop, but never climb ladders, ropes, or scaffolds, kneel, crouch, or crawl. She must avoid concentrated exposure to extreme heat/cold, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards. She could

have unlimited exposure to wetness, noise, and vibration.
This opinion is unpersuasive.

State agency medical consultant [Dr. Whang] opined
[Plaintiff] could perform light exertion. She could [not]
climb ladders, ropes, or scaffolds, but could perform all other
postural activities occasionally. She must avoid concentrated
exposure to extreme cold, fumes, odors, gases, and poor
ventilation, but have unlimited exposure to extreme heat,
wetness, humidity, noise, vibration, or hazards. This opinion
is generally persuasive, but other evidence shows [Plaintiff] is
more limited in terms of manipulative, foot controls,
environmental, and hazards in light of the cervical objective
findings on x-ray, the history of surgery, physical
examinations, and documentation of weakness and sensory
deficits in the right upper extremity.

Id. at 26-27 (exhibit citations omitted).

Plaintiff argues that the ALJ substituted her lay opinion over those of the
consultative examiners, resulting in "irreconcilable differences" between the ALJ's
findings and those of the examiners. Doc. 10 at 6. Defendant counters that, in effect,
Plaintiff simply disagrees with the ALJ's rejection of the standing and walking
limitations found by the consultative examiners. Doc. 11 at 5-7.

Determining a claimant's RFC is the exclusive task of the ALJ. See Cleinow v.
Berryhill, 311 F. Supp.3d 683, 685 n.11 (E.D. Pa. 2018) ("Surveying the medical
evidence to craft an RFC is part of the ALJ's duties.") (quoting Titterington v. Barnhart,
174 F. App'x 6, 11 (3d Cir. 2006)). The regulations state that an ALJ is not required to
defer to any specific medical opinion. 20 C.F.R. §§ 404.1520c(a), 416.920c(a); see also
Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 206 (3d Cir. 2008) (ALJ properly
rejected opinion evidence that was not supported by the record); Doty v. Colvin, Civ. No.

13-80, 2014 WL 29036, at *1 n.1 (W.D. Pa. Jan. 2, 2014) (ALJ is not prohibited "from

making an RFC assessment even if no doctor has specifically made the same findings and

even if the only medical opinion in the record is to the contrary").  As a result,

differences between the ALJ's findings and the consultative examiners' opinions are not

determinative, but rather whether substantial evidence supports the ALJ's evaluation of

the supportability and consistency of those opinions.

Here, the ALJ found the opinions of Dr. Dzurinko to be "somewhat persuasive,"

explaining that the doctor's limitations on Plaintiff's ability to stand/walk total and

sit/stand/walk at one time are not supported by the record because Plaintiff does not use

any assistive devices and the record shows that Plaintiff obtained some relief from the

interventions sought.  Tr. at 27.  Although Dr. Dzurinko found at his June 29, 2021

examination that Plaintiff had an antalgic gate, reduced squat, and tenderness, the doctor

characterized Plaintiff's antalgic gate as mild and found that she exhibited full strength

and negative SLR testing except for isolated pain in her right knee while supine.  Id. at

524-25.  The record shows Plaintiff's gait to be mostly intact and steady, with only one

other observation of antalgic gait, id. at 822 (Dec. 28, 2020), and at times Plaintiff denied

having an unsteady gate.  See id. at 778, 782 (Dec. 1 & 4, 2021).  The record also

supports the ALJ's characterization of reported improvement, as for example Plaintiff

reported in November 2021 that she had "significant" relief of 80 -to- 95% following

injections and SI radiofrequency ablation performed months earlier, id. at 818, and in

January 2022, Plaintiff reported ongoing relief, with average pain of about 3/10, less

frequent and less intense since the procedures.  Id. at 787-88.

As for the opinions of Dr. Patel, the ALJ found them to be "unpersuasive" for the same reasons that the ALJ discounted the opinions of Dr. Dzurinko, and additionally because Plaintiff was not a candidate for surgery. Tr. at 27. Dr. Patel's examination revealed that Plaintiff had a normal gait, could walk on heels and toes with no difficulty, perform a full squat, and get on and off the examination table without assistance, with 5/5 strength in her upper and lower extremities, intact hand and finger dexterity, and negative SLR testing bilaterally, both supine and seated, with no pain produced. Id. at 545-46. The ALJ reasonably concluded that such findings did not support Dr. Patel's stand/walk limitations, nor were the consultant's opinions consistent with prior administrative medical findings that Plaintiff could perform light-level work or examination findings that consistently showed no deficits in Plaintiff's ability stand and walk.

Plaintiff also argues that the ALJ erred by not including the consultative examiners' standing and walking limitations in the hypotheticals posed to the VE at Plaintiff's administrative hearing. Doc. 10 at 7. However, as Defendant correctly points out, see Doc. 11 at 7, an ALJ's hypothetical questions need only include functional limitations which are supported by the record. See Ramirez v. Barnhart, 372 F.3d 546, 552 (3d Cir. 2004) ("A hypothetical question must reflect *all* of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence.") (emphasis in original) (quoting Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987)); see also Rutherford, 399 F.3d at 554 (ALJ not required to submit to the VE every impairment alleged by claimant, but rather "the ALJ must accurately convey to the [VE] all of a claimant's *credibly*

21

*established limitations*") (emphasis in original) (citing <u>Plummer</u>, 186 F.3d at 431).

Because the ALJ's evaluation of the consultative examiners' opinions is supported by

substantial evidence, as discussed above, the ALJ was not required to include the

consultative examiners' standing and walking limitations in the hypotheticals posed to

the VE.

**IV.    <u>CONCLUSION</u>**

The ALJ properly evaluated the opinions of the consultative examiners in

assessing Plaintiff's RFC, and included Plaintiff's credibly established limitations in the

hypotheticals posed to the VE.  Therefore, I find that the ALJ's decision is supported by

substantial evidence.  An appropriate Order follows.

An appropriate Order follows.